UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DIVANE, JR., KENNETH J. BAUWENS, MICHAEL J. CADDIGAN, SAMUEL EVANS, MICHAEL FITZGERALD, THOMAS C. HALPERIN, DANIEL MEYER, KEVIN M. O'SHEA, RICHARD SIPPLE, and MICHAEL L. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, <br><br> Plaintiffs, <br><br> v. <br><br> SONAK ELECTRICAL CONTRACTORS, INC. and AKIN SONUGA, <br><br> Defendants. | 05 C 1211 <br><br> Judge George M. Marovich |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs William Divane Jr. ("Divane"), Kenneth J. Bauwens, Michael Caddigan, Samuel Evans, Michael Fitzgerald, Thomas C. Halperin, Daniel Meyer, Kevin M. O'Shea, Richard Sipple and Michael L. Walsdorf (collectively, the "Trustees"), as the Electrical Insurance Trustees, filed a complaint against defendants Sonak Electrical Contractors ("Sonak Electrical") and Akin Sonuga ("Sonuga"). In their complaint, plaintiffs allege that Sonak Electrical breached collective bargaining agreements by failing to pay pension contributions and failing to maintain a fringe-benefit bond. Plaintiffs also allege that Sonuga is personally liable for a bounced check. Plaintiffs have moved for summary judgment on all of their claims. For the reasons set forth below, the Court grants in part and denies in part plaintiffs' motion for summary judgment.

I.      **Background**

Before the Court discusses the undisputed facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. *See Thomas v. CitiMortgage, Inc.*, Case No. 03 C 6177, 2005 WL 1712266 at *1 n. 1 (N.D. Ill. Jul. 20, 2005); *Perez v. City of Batavia*, Case No. 98 C 8226, 2004 WL 2967153 at *10 (N.D. Ill. Nov. 23, 2004); *see also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed.

As plaintiffs point out, the defendants failed to file a response to plaintiffs' statement of material facts. Plaintiffs, thus, argue that all of the facts in their statement of facts should be deemed admitted. Plaintiffs are correct that where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does not absolve plaintiffs of their initial burden of putting forth admissible evidence to support their facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. Among the types of evidence admissible for summary judgment purposes are admissions. *See* Fed. R. Civ. P. 56© ("The judgment sought shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and *admissions* on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (emphasis added); *Woods v. City of Chi.*, 234 F.3d 979, 989 (7th Cir. 2000) ("An 'admission' includes 'anything which is in practical effect an admission' including statements made in a brief presented to the district court[.]") (internal citations omitted). Accordingly, the asserted facts (4, 5, 15, 16, 17, 18, 27, 28 and parts of 6 and 29) that plaintiffs supported with admissible evidence (including admissions) are deemed admitted.

The asserted facts plaintiffs failed to support with admissible evidence, on the other hand, are not deemed admitted merely because defendants failed to respond. In this particular case, plaintiffs sought to support some of their asserted facts with admissions in defendants' answer to plaintiffs' complaint. Specifically, plaintiffs sought to use as admissions against defendants those allegations that defendants failed to deny in their answer. The Federal Rules of Civil Procedure make clear that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." *See* Fed. R. Civ. P. 8(d). Thus, any allegations in plaintiffs' complaint that defendants failed to deny are deemed admitted. *See King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant, Inc.*, 180 F.R.D. 332, 334 (N.D. Ill. 1998) (deeming admitted complaint allegations that defendant failed to deny properly); *see also State Farm Mutual Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 278-280 (N.D. Ill. 2001) (outlining proper way to answer complaint under the Federal Rules of Civil Procedure). The Federal Rules, however, provide two ways to deny an allegation. The first is a simple denial. The second is to state that the party lacks "knowledge or

information sufficient to form a belief as to the truth" of the allegation. Such an answer is deemed a denial. *See* Fed. R. Civ. P. 8(b) ("If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial."). Thus, defendants effectively denied paragraphs 8, 9, 10, 11-12, 13, 14, 19 and 20 and portions of paragraphs 6 and 7 of plaintiffs' complaint. The Court does not deem defendants to have admitted those allegations, and the plaintiffs cannot use those paragraphs to support facts asserted in their statement of facts.

The following facts are undisputed.

At some point (the exact timing is irrelevant), the Electrical Contractors Association of the City of Chicago (of which plaintiffs are the Trustees) and the International Brotherhood of Electrical Workers Local Union 134 entered a collective bargaining agreement ("the Principal Agreement"). The Principal Agreement provides, in relevant part:

> **Section 18.06** Effective June 2, 2003 through June 6, 2004, the Employer shall contribute an amount equal to 33.4324% of the Gross Productive Electrical Labor Payroll of Employees to cover the following fringe benefits: Health and Welfare, Local Pension, Apprenticeship and Training Contribution, the Labor Management Cooperation Committee of Chicago and the Electrical Industry Drug-Free Alliance. This percentage contribution made to the Electrical Insurance Trustees will be based upon the Journeyman scale for all classifications of labor excluding apprentices.
>
> **Section 18.07** The Employer shall contribute $2.15 per hour for each hour worked into the Annuity Plan.
>
> **Section 18.08** Effective June 2, 2003 through June 6, 2004, $1.45 per hour for each hour worked will be contributed into the Additional Security Benefit Plan (ASBP) for General Foremen, Foremen, Journeyman Wiremen and Apprentices. Apprentices will receive a percentage of the ASBP contribution in accord with the percentages in Article XVIII, Section 4 of this Agreement.

> **Section 18.09** Effective June 2, 2003, all Employers covered by this Agreement shall contribute $.06 per hour worked for each employee covered by this Labor Agreement to the Administrative Maintenance Fund. . . .
>
> * * *
>
> **Section 18.14** "Gross Productive Electrical Labor Payroll" is defined to mean total wages paid for all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor agreement. Gross payroll includes all wages paid including overtime premium pay computed at the rate established for each classification of electrical labor. No portion of wages shall be excluded from Gross Productive Electrical Labor Payroll. This definition has been the basis for payment to the National Electrical Benefit Fund and its adoption in the local Agreement is intended to eliminate confusion, facilitate computation and effectuate savings for the Employer.

Principal Agreement at pp. 25-26.

Sonak Electrical signed a Letter of Assent, by which it agreed to "comply with, and be bound by, all of the provisions" in the Principal Agreement as of November 26, 1996. Sonak Electrical also signed Letters of Assent by which it agreed to be bound by a "Communication Agreement" and a "Residential Agreement." The terms of the Communication Agreement and the Residential Agreement are not in evidence.

The plaintiffs conducted an audit of Sonak Electrical's books for the period of January 1, 2003 to August 31, 2004. The audit revealed that Sonak Electrical had underpaid contributions due under the Principal Agreement and the Residential Agreement in the amount of $239,393.81. The majority of the amount due was owed to the Health & Welfare, Local Pension, Apprenticeship and Training and Supplemental Unemployment Benefit Funds, with lesser amounts due to the Annuity Fund, the Additional Security Benefit Fund and the Administrative Maintenance Fund. It is not clear from the record how much of the outstanding amount is due under the Residential Agreement and how much is due under the Principal Agreement. Plaintiffs

concede that they have recovered some amount due from Sonak Electrical since filing their motion for summary judgment.

Meanwhile, the surety bonds covering Sonak Electrical's obligations under certain benefit plans were canceled. In July 2004, Financial Benefits Insurance Company, which had issued the bonds, informed the Trustees that the bond covering Sonak Electrical's obligations under the Principal Agreement would be canceled effective December 1, 2004 and that the bond covering Sonak Electrical's obligations under the Communication Agreement and the Residential Agreement would be canceled effective August 19, 2004. Sonak Electrical has not provided replacement bonds.

All of the facts above relate to plaintiffs' claims against Sonak Electrical. The facts related to plaintiffs' claim against Sonuga are as follows. In August 2004, the Trustees received a check in the amount of $7,381.00 from Sonak Electrical for fringe benefit contributions. The check, which was signed by Sonuga, was presented to the bank, which returned it for non-sufficient funds. The Trustees demanded payment from Sonuga, who failed to pay the funds within 30 days. The amount has yet to be paid.

**II.     Summary Judgment Standards**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however,

when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.  Discussion

### A.  Delinquent pension contributions

In Count I, plaintiffs seek delinquent contributions to benefit plans. Section 515 of the Employee Retirement Income Security Act ("ERISA") provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This provides the Trustees, who have standing to sue under ERISA, a right of action to enforce an employer's obligations to make pension contributions pursuant to a collective bargaining agreement (to which the Trustees are not a party).

In Count I, plaintiffs seek delinquent contributions under the Principal Agreement and under the Residential Agreement. The undisputed evidence makes clear that plaintiffs are entitled to summary judgment on the merits but not as to damages on their claim that defendant breached the Principal Agreement. Plaintiffs are not entitled to summary judgment on their claim that defendant breached the Residential Agreement.

The Court first considers the Principal Agreement. It is clear from the undisputed evidence that defendants breached the Principal Agreement by failing to make certain benefit plan contributions. The Principal Agreement sets out the amounts that must be contributed to particular funds, including the Health & Welfare Fund, Local Pension Fund, Apprenticeship and Training Fund, Supplemental Unemployment Benefit Fund, Annuity Fund, Additional Security Benefit Fund and the Administrative Maintenance Fund. It is also undisputed that an August 2004 audit found Sonak Electrical to have underpaid by $239,393.81contributions due under the Principal Agreement and the Residential Agreement. Thus, plaintiffs have established that they are entitled to judgment as a matter of law on their claim that Sonak Electrical breached the Principal Agreement by failing to pay contributions due under that collective bargaining agreement.

The amount of damages due for breach of the Principal Agreement, however, cannot be determined from the record evidence for two reasons. First, there is no evidence in the record stating how much of the underpayment is attributable to the Principal Agreement and how much is attributable to the Residential Agreement. (The Court will not make assumptions on that issue because it considers the evidence in the light most favorable to the non-moving party.) Second, it is not clear what, if any, payments have been made under the Principal Agreement since the date plaintiffs moved for summary judgment (although plaintiffs concede that at least one payment has been made with respect to one or more of the Agreements at issue).

Next, the Court considers plaintiffs' claim that Sonak Electrical violated the Residential Agreement by failing to make contributions. The problem here (which would have been very simple to avoid) is that plaintiffs have failed to put forth any admissible evidence that any

provision of the Residential Agreement requires Sonak Electrical to make contributions to any benefit plan. Accordingly, plaintiffs are not entitled to summary judgment on this issue.

### B. Bonds

In Count II, plaintiffs allege that defendants have violated a collective bargaining agreement by failing to maintain a fringe-benefit bond.

Simply put, plaintiffs have failed to establish that they are entitled to judgment as a matter of law because they have failed to put forth admissible evidence of any provision of a collective bargaining agreement that requires defendants to post a fringe-benefit bond. Plaintiffs' motion for summary judgment on Count II is denied.

### C. Plaintiffs' claim against Sonuga

Plaintiffs also move for summary judgment with respect to Count III. In Count III, plaintiffs allege that, pursuant to 720 ILCS 5.17-1a, Sonuga is personally liable to the Trustees for $7,381.00, the amount of the bounced check Sonuga signed.

Pursuant to 720 ILCS 5/17-1a:

> A person who issues a check or order to a payee *in violation of Section 17-1(B)(d)* and who fails to pay the amount of the check or order to the payee within 30 days following either delivery and acceptance by the addressee of a written demand by both certified mail and first class mail to the person's last known address . . . shall be liable to the payee or a person subrogated to the rights of the payee for, in addition to the amount owing upon such check or order, damages of treble the amount so owing, but in no case less than $100 nor more than $1,500, plus attorneys fees and court costs.

720 ILCS 5/17-1a (emphasis added). Section 17-1(B)(d), in turn, provides:

> A person commits a deceptive practice when, *with intent to defraud*, the person does any of the following:
> (d) With intent to obtain control over property or to pay for property, labor or services of another, or in satisfaction of an obligation for payment of tax under the

> Retailers' Occupation Tax Act or any other tax due to the State of Illinois, he or she issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. . . .

720 ILCS 5/17-1(B)(d) (emphasis added).

Thus, in order to be entitled to judgment as a matter of law on Count III, plaintiffs must put forth undisputed evidence that Sonuga: (1) delivered a check to obtain personal property, labor or services or to satisfy a tax obligation; (2) while knowing that the account was insufficient to pay; (3) with the intent to defraud; and (4) failed to pay on demand. *See Veterans Supply Co. v. Swaw*, 548 N.E. 2d 667, 668 (Ill. App. First Dist. 1989); 720 ILCS 5/17-1 and 17-1a.

Plaintiffs have failed to show that they are entitled to judgment as a matter of law on Count III because they have failed to put forth any evidence to establish necessary elements of the claim. For example, the statute makes actionable the delivery of a bad check for only certain purposes, namely to obtain personal property, labor or services or to pay tax obligations. Plaintiffs have not put forth evidence that Sonuga delivered a bad check for those reasons. Rather, plaintiffs put forth evidence that Sonuga signed the check to pay pension obligations, which are not among the obligations mentioned in the statute. In addition, plaintiffs failed to put forth any evidence that Sonuga delivered the check with the intent to defraud. Accordingly, plaintiffs have failed to meet their obligation of establishing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law with respect to Count III.

The Court denies plaintiffs' motion for summary judgment with respect to Count III.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiffs' motion for summary judgment. With respect to Count I, the Court grants plaintiffs summary judgment on the merits of their claim that Sonak Electrical breached the Principal Agreement by failing to make benefit fund contributions. The Court denies plaintiffs' motion for summary judgment on the remainder of Count I and on Counts II and III.

The parties are ordered to appear for a status hearing before the Court on 09/22/06 at 11:00 a.m. in order to set a trial date.

ENTER:

George M. Marovich
United States District Judge

DATED:08/24/06