UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DIVANE, JR., KENNETH J. BAUWENS, MICHAEL J. CADDIGAN, SAMUEL EVANS, MICHAEL FITZGERALD, THOMAS C. HALPERIN, DANIEL MEYER, KEVIN M. O'SHEA, RICHARD SIPPLE, and MICHAEL L. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, | )<br>)<br>)<br>)<br>) 05 C 1211<br>)<br>) Judge George M. Marovich |
| Plaintiffs, | ) |
| v. | ) |
| SONAK ELECTRICAL CONTRACTORS, INC. and AKIN SONUGA, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs William Divane Jr. ("Divane"), Kenneth J. Bauwens, Michael Caddigan, Samuel Evans, Michael Fitzgerald, Thomas C. Halperin, Daniel Meyer, Kevin M. O'Shea, Richard Sipple and Michael L. Walsdorf (collectively, the "Trustees"), as the Electrical Insurance Trustees, filed a complaint against defendants Sonak Electrical Contractors, Inc. ("Sonak Electrical" or "defendant") and Akin Sonuga ("Sonuga"). In Counts I and II of their complaint, plaintiffs alleged that Sonak Electrical breached collective bargaining agreements by failing to pay benefit contributions and failing to maintain a fringe-benefit bond. Plaintiffs also alleged, in Count III, that Sonuga is personally liable for a bounced check. Plaintiffs have moved for summary judgment on Counts I and II and move to dismiss voluntarily Count III. For the reasons set forth below, the Court grants plaintiffs' motion.

**I.   Background**

Before the Court discusses the undisputed facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The following facts are undisputed unless otherwise noted.

At some point (the exact timing is irrelevant), the Electrical Contractors Association of the City of Chicago (of which plaintiffs are the Trustees) and the International Brotherhood of Electrical Workers Local Union 134 entered a collective bargaining agreement ("the Principal Agreement"). The Principal Agreement provides, in relevant part:

> **Section 18.06** Effective June 2, 2003 through June 6, 2004, the Employer shall contribute an amount equal to 33.4324% of the Gross Productive Electrical Labor Payroll of Employees to cover the following fringe benefits: Health and Welfare, Local Pension, Apprenticeship and Training Contribution, the Labor Management Cooperation Committee of Chicago and the Electrical Industry Drug-Free Alliance. This percentage contribution made to the Electrical Insurance Trustees will be based upon the Journeyman scale for all classifications of labor excluding apprentices.

> **Section 18.07** The Employer shall contribute $2.15 per hour for each hour worked into the Annuity Plan.
>
> **Section 18.08** Effective June 2, 2003 through June 6, 2004, $1.45 per hour for each hour worked will be contributed into the Additional Security Benefit Plan (ASBP) for General Foremen, Foremen, Journeyman Wiremen and Apprentices. Apprentices will receive a percentage of the ASBP contribution in accord with the percentages in Article XVIII, Section 4 of this Agreement.
>
> **Section 18.09** Effective June 2, 2003, all Employers covered by this Agreement shall contribute $.06 per hour worked for each employee covered by this Labor Agreement to the Administrative Maintenance Fund. . . .
>
> \*   \*   \*
>
> **Section 18.14** "Gross Productive Electrical Labor Payroll" is defined to mean total wages paid for all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor agreement. Gross payroll includes all wages paid including overtime premium pay computed at the rate established for each classification of electrical labor. No portion of wages shall be excluded from Gross Productive Electrical Labor Payroll. This definition has been the basis for payment to the National Electrical Benefit Fund and its adoption in the local Agreement is intended to eliminate confusion, facilitate computation and effectuate savings for the Employer.

Principal Agreement at pp. 25-26.

The Principal Agreement also outlines a "Delinquency Collection Policy" that includes the payment of liquidated damages and interest. It states, in relevant part:

> **Section 21.01**
>
> \*   \*   \*
>
> (c) Additional Charge for Delinquency. Failure to pay the contribution by the Due Date will result in liquidated damages of one percent (1%), multiplied by the total amount due for each day late, up to ten percent (10%).
>
> (d) Past Due Date and Amount. If an Employer's delinquent payment is not received by the last day of the month ("Past Due Date") following the month in which work was performed, the Trustees will assess additional liquidated damages and interest as follows:

>   (1) Liquidated damages at the rate described in item (c) above, plus an additional five percent (5%) of the delinquent amount. If the delinquent payment is not received by the last day of the month following the Past Due Date, another five percent (5%) in liquidated damages will be assessed.
>
>   (2) Interest at the rate of one percent (1%) will be assessed for each month, or a part thereof, that a payment is late.

Principal Agreement at 28-29.

Sonak Electrical signed a Letter of Assent, by which it agreed to "comply with, and be bound by, all of the provisions" in the Principal Agreement as of November 26, 1996. Sonak Electrical also signed Letters of Assent by which it agreed to be bound by a "Residential Agreement."

The Residential Agreement, like the Principal Agreement, sets out payment requirements for fringe benefits. It states, in relevant part:

> **Section 8.01** Effective June 2, 2003 through June 6, 2004, the Employer shall contribute an amount equal to 32.2473% of the Gross Productive Electrical Labor Payroll of Employees to cover the following fringe benefits: Health and Welfare, Local Pension, Apprenticeship and Training Contribution, and the Labor Management Cooperation Committee of Chicago. This percentage contribution made to the Electrical Insurance Trustees will be based upon the Residential Wiremen Scale for all classifications of labor excluding Apprentices.
>
> **Section 8.02** The Employer shall contribute $2.15 per hour for each hour worked into the Annuity Plan.
>
> **Section 8.03** Effective June 2, 2003, $1.45 per hour for each hour worked will be contributed into the Additional Security Benefit Plan (ASBP) for General Foremen, Foremen, Journeymen, Wiremen and Apprentices. * * *
>
> **Section 8.05** Effective June 2, 2003, all Employers covered by this Agreement shall contribute $.06 per hour worked for each employee covered by this Labor Agreement to the Administrative Maintenance Fund.

(Residential Agreement at 14-15). The Residential Agreement contains a "Delinquency Collection Policy" that is identical to the one in the Principal Agreement. *See* Residential Agreement at 18-19.

The agreements also required Sonak Electrical to maintain bonds to ensure its performance under the agreements. Both the Residential Agreement and the Principal Agreement state, "The Employer shall furnish two bonds, each with corporate surety, one to guarantee the payment of wages with the Union as 'obligee' and the other to guarantee the payment of fringe benefit contributions with the Electrical Insurance Trustees as 'obligee.'" *See* Principal Agreement at 34; Residential Agreement at 21.

The plaintiffs conducted an audit of Sonak Electrical's books for the period of January 1, 2003 to August 31, 2004. The audit revealed that Sonak Electrical had underpaid contributions due under the Principal Agreement and the Residential Agreement in the amount of $239,393.81. The majority of the amount due was owed to the Health & Welfare, Local Pension, Apprenticeship and Training and Supplemental Unemployment Benefit Funds, with lesser amounts due to the Annuity Fund, the Additional Security Benefit Fund and the Administrative Maintenance Fund. According to plaintiffs, total payments of $367,728.06 have been made on behalf of Sonak Electrical. According to defendant, payments of $339,927.42 have been made on its behalf, and that amount includes a check for $31,631.94, which the plaintiffs do not have a record of receiving. As of December 5, 2007, defendant was delinquent in the amount of $188,223.62, an amount which includes liquidated damages and interest.

Meanwhile, the surety bonds covering Sonak Electrical's obligations under the benefit plans were canceled. In July 2004, Financial Benefits Insurance Company, which had issued the

bonds, informed the Trustees that the bond covering Sonak Electrical's obligations under the Principal Agreement would be canceled effective December 1, 2004 and that the bond covering Sonak Electrical's obligations under the Residential Agreement would be canceled effective August 19, 2004.  Sonak Electrical has not provided replacement bonds.

## II. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. Delinquent pension contributions

In Count I, plaintiffs seek from defendant Sonak Electrical delinquent contributions to benefit plans.  Section 515 of the Employee Retirement Income Security Act ("ERISA") provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This provides the Trustees, who have standing to sue under ERISA, a right of action to enforce an employer's obligations to make pension contributions pursuant to a collective bargaining agreement (to which the Trustees are not a party).

In Count I, plaintiffs seek delinquent contributions under the Principal Agreement and under the Residential Agreement. In a previous opinion, the Court granted summary judgment to the plaintiffs as to the merits of its claim that defendant breached the Principal Agreement to pay contributions.

The Court now considers the Residential Agreement. It is clear from the undisputed facts that defendant breached the Residential Agreement by failing to make certain benefit plan contributions. The Residential Agreement sets out the amounts that must be contributed to particular funds, including the Health and Welfare Fund, Local Pension Fund, Annuity Plan Fund, Additional Security Benefit Plan Fund and Administrative Maintenance Fund. It is also undisputed that an August 2004 audit found Sonak Electrical to have underpaid by $239,393.81contributions due under the Principal Agreement and the Residential Agreement. Thus, plaintiffs have established that they are entitled to judgment as a matter of law on their claim that Sonak Electrical breached the Residential Agreement by failing to pay contributions due under that collective bargaining agreement.

The Court next considers the proper amount of damages due for defendant's breaches of the Principal Agreement and the Residential Agreement. There is one dispute of fact as to payments made on defendant's behalf, but the dispute is not material. Defendant has put forth

evidence of $339,927.42 worth of payments made on its behalf. One of those payments was a check in the amount of $31,631.94. Although plaintiffs do not provide a record of having received the check for $31,631.94, plaintiffs have credited defendant's account for payments in excess of the $339,927.42 that defendant asserts have been paid on its behalf. Specifically, plaintiffs have credited defendant's account for payments in the amount of $367,728.06. Accordingly, there appears to be no dispute that defendant is delinquent in an amount not less than $188,223.62 (an amount which credits defendant's account for even more than defendant believes has been paid on its behalf).

Plaintiffs are entitled to judgment as a matter of law on Count I. The Court hereby grants plaintiffs summary judgment on Count I in the amount of $188,223.62.

**B.     Bonds**

In Count II, plaintiffs allege that defendant Sonak Electrical has violated a collective bargaining agreement by failing to maintain a fringe-benefit bond. It is undisputed that both the Residential Agreement and the Principal Agreement require defendant to furnish a bond to guarantee the payment of fringe benefits. It is also undisputed that the bond covering Sonak Electrical's obligations under the Principal Agreement was canceled effective December 1, 2004. The bond covering Sonak Electrical's obligations under the Residential Agreement was canceled effective August 19, 2004. Sonak Electrical has not procured replacement bonds.

Plaintiffs have shown that they are entitled to judgment as a matter of law on Count II. Accordingly, the Court grants plaintiffs' motion for summary judgment with respect to Count II.

There remains the question of a remedy. The Court has discretion under ERISA to grant injunctive relief. 29 U.S.C. § 1132(a)(3). Plaintiffs seek a permanent injunction barring Sonak

Electrical from engaging in any work covered by the Residential and Principal Agreements until it posts the fringe benefit bond. Plaintiffs, however, have put forth no evidence that Sonak Electrical is currently performing or plans to perform any work that would be covered by the Principal and/or Residential Agreements. The Court does not believe that defendant's past failure to secure a bond is sufficient to justify a permanent injunction when there has been no showing that defendant is currently engaging or intends to engage in covered work. *See Trustees of the Wash. Area Carpenters' Pens. and Ret't Fund v. Mergentime Corp.*, 743 F.Supp. 422, 428 (D. Mary. 1990).

### C. Plaintiffs' claim against Sonuga

Based on the Court's prior summary judgment decision with respect to Count III, the plaintiffs have moved to dismiss Count III without prejudice. The motion is granted, and the Court hereby dismisses without prejudice Count III.

## IV. Conclusion

For the reasons set forth above, the Court grants plaintiffs' motion for summary judgment. The Court grants plaintiffs summary judgment on Count I in the amount of $188,233.62. The Court grants plaintiffs summary judgment on Count II. The Court dismisses without prejudice Count III.

ENTER:

George M. Marovich
United States District Judge

DATED: January 9, 2008